■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BENJAMIN E. COHEN, Appellant. [640 NYS2d 921] —White, J. Appeal from a judgment of the County Court of Warren County (Moynihan, Jr., J.), rendered April 12, 1995, convicting defendant upon his plea of guilty of the crime of murder in the second degree.

After County Court denied his omnibus motion to suppress physical evidence and his inculpatory statement pertaining to the murder of a store clerk that occurred on November 27, 1994 at a Citgo mini-mart in the Town of Lake George, Warren County, defendant entered a guilty plea to the crime of murder in the second degree. He now appeals, principally contending that his inculpatory statement should have been suppressed.

The facts adduced at the *Huntley* hearing disclose that on December 1, 1994 at about 6:00 P.M., several police officers executed a search warrant at a residence in the Town of Lake George occupied by David McCulloch. When the officers entered the residence, they encountered a chaotic situation with a number of people in the living room, along with a large menacing dog. To take control of the situation, the police ordered everyone to remain in place and "maced" the dog. Contemporaneously, Police Investigator Robert Snyder encountered defendant and ascertained that he was willing to talk to the police. Because the dog was advancing on Snyder, he grabbed defendant on the side of his neck and briskly walked him outside. When they got outside, Snyder released his hold and State Police Investigator Michael Huskie took defendant's arm. The officers and defendant then walked to a patrol car and drove to the Lake George police station, arriving at about 6:40 P.M. Defendant was taken to the deputy's lounge where he was given his *Miranda* rights, which he acknowledged that he

understood and knowingly and intelligently waived. Snyder offered defendant something to drink before posing questions about a 1993 burglary at Thompson's Garage in the Town of Lake George and the Citgo murder. Defendant denied participating in either crime; however, at 7:15 P.M., Snyder advised him that a fellow suspect had implicated him in the Citgo murder. At that point, defendant hung his head and shoulders, remaining silent for approximately 15 minutes while the police continued to question him. After a cigarette break, defendant, at 8:15 P.M., agreed to talk, providing the police with detailed oral and written statements concerning the Citgo murder. At the conclusion of his written statement, defendant was placed under arrest.

Predicated upon the fact that he had retained counsel to represent him in the Thompson burglary matter, defendant contends that the questioning regarding the Citgo murder violated his right to counsel. As the burglary and the murder were about one year apart and as there is no evidence that they were part of a common scheme or plan, they are unrelated and defendant's representation by counsel in the Thompson burglary was not a bar to his knowing and voluntary waiver of his *Miranda* rights in the absence of counsel in the instant case (*see, People v West*, 81 NY2d 370, 378; *People v Bing*, 76 NY2d 331, 349; *People v Decan*, 206 AD2d 489, 489-490, *lv denied* 84 NY2d 867; *People v Snickles*, 206 AD2d 675, 677, *lv denied* 84 NY2d 872; *People v Munck*, 190 AD2d 963, 964, *lv denied* 81 NY2d 974). We disagree with defendant that the intermingling of questions about the burglary and the Citgo murder implicated the holding of *People v Rogers* (48 NY2d 167), since the questions concerning the burglary were not the crucial element in securing defendant's confession (*see, People v Ermo*, 47 NY2d 863, 865).

We reject defendant's argument that he invoked his right to remain silent by remaining mute for 15 minutes during the interrogation (*see, People v Davis*, 91 AD2d 1191; *People v Allen*, 147 AD2d 968, *lvs denied* 73 NY2d 1010, 74 NY2d 660). Defendant's silence after responding to questions for 30 minutes was ambiguous conduct that a reasonable police officer under these circumstances would not have understood to have been an assertion of the right to remain silent (*see, Davis v United States*, 512 US 452, 454; *Coleman v Singletary*, 30 F3d 1420, 1424, *cert denied* — US —, 115 S Ct 1801).

Defendant further argues that his statement should have been suppressed since it was the product of physical and verbal

coercion. However, County Court found defendant's testimony incredible. Taking into account the manner in which Snyder escorted defendant out of the residence, the testimony of the correction officers, who were present when defendant was body searched after his arrest and testified that the search disclosed no marks or bruises and that defendant did not complain of any pain or discomfort, and the implausibility of the defendant's testimony that the police composed his statement, which contained facts known only to the perpetrator of the crime, we will not disturb County Court's credibility determination as it is supported by the record (*see, People v Reaves*, 209 AD2d 647, *lv denied* 84 NY2d 1037) or its finding that defendant's confession was not physically coerced (*see, People v Turner*, 200 AD2d 603, 604, *lv denied* 83 NY2d 811; *People v Diaz*, 177 AD2d 500, 503, *lv denied* 79 NY2d 1048; *People v Sanchez*, 133 AD2d 384, 385, *lv denied* 70 NY2d 960; *People v Chalos*, 111 AD2d 827, 828, *lv denied* 66 NY2d 918). We note that, as there is no causal connection between defendant's statement and the force used to escort him out of the residence, the voluntariness of his statement was not impaired (*see, People v Alvarez*, 186 AD2d 56, 57).

Next, defendant claims that the search warrant was invalid because it was based upon false statements. The application was supported by affidavits by William Vanness, a police investigator, and a signed statement containing a Penal Law § 210.45 notice from Christopher Mackrodt. Vanness stated that a spent bullet found at the murder site indicated that the murder weapon was a .22-caliber older model revolver and that he believed a small gray or silver sedan may have been employed by the perpetrators of the crime. Mackrodt's statement recited that when he was at McCulloch's residence in October 1994, McCulloch showed him a .22-caliber revolver that appeared to be an older gun which McCulloch said was stolen from Thompson's Garage. Mackrodt specifically described the weapon and further related that he saw it again at McCulloch's residence around November 20, 1994. He also stated that defendant drove a gray 1985 Honda Civic and that defendant had spoken of the possibility of robbing a convenience store.

At the suppression hearing, it was learned that Mackrodt had been arrested for the theft of the murder weapon from Thompson's Garage. Contrary to defendant's claim, this fact does not vitiate the warrant for it does not establish that Mackrodt's description of the weapon and his assertion that it was in McCulloch's residence were false statements (*see, People v*

*Hawley*, 192 AD2d 742, 744, *lv denied* 82 NY2d 896). In any event, Mackrodt's veracity could be inferred from the detailed statement that he gave which was based upon his own observations and which was given with the express understanding that making a false statement was a crime (*see, People v Mc-Cann*, 85 NY2d 951, 953).

Lastly, in light of the brutal nature of the crime and defendant's failure to present any extraordinary circumstances or to demonstrate an abuse of discretion by County Court, we shall not disturb the sentence of imprisonment of 25 years to life imposed upon him (*see, People v Dexheimer*, 214 AD2d 898, 902, *lv denied* 86 NY2d 872; *People v Padula*, 197 AD2d 747, 749, *lv denied* 82 NY2d 928).

Cardona, P. J., Mercure, Casey and Spain, JJ., concur. Ordered that the judgment is affirmed.