OPINION OF THE COURT
 

 Levine, J.
 

 Defendant appeals, leave having been granted by a Judge of
 
 *635
 
 this Court, from the denial of his omnibus motion to suppress his confession and physical evidence seized pursuant to a search warrant, both obtained in connection with the November 27, 1994 robbery-murder of the store clerk of a Citgo station mini-mart at Exit 23 of the North way in the Town of Lake George, Warren County.
 

 During the initial police investigation of the Citgo homicide, the police recovered a spent bullet which laboratory analysis later determined had been fired from a .22 caliber older model gun. This information and the statement of an identified informant, Christopher Mackrodt, largely comprised the basis for the warrant. Mackrodt gave his statement with notice that any falsity would subject him to criminal sanctions under Penal Law § 210.45.
 

 Mackrodt related that, when visiting the home of codefendant David McCulloch and in the presence of defendant and codefendant Francis Anderson, he was shown: an older-looking .22 caliber revolver, black-colored with a wooden handle; a .357 caliber revolver; and a third gun which he described in appearance but could not otherwise identify. In his subsequent visits to the McCulloch residence, defendant, McCulloch and Anderson disclosed to Mackrodt that they had stolen the three guns from Thompson’s Garage in Lake George Village, and that they were thinking of robbing the Citgo station at Exit 23 of the Northway.
 

 Submitted with the search warrant application for the Mc-Culloch residence was documentary verification of the December 7, 1993 burglary of Thompson’s Garage, in which three guns were stolen, a Huger Blackhawk .357 caliber revolver, a Charter Arms .22 caliber revolver and a P38 Walther semiautomatic pistol. The applicant, Investigator William VanNess of the Warren County Sheriffs Department, opined that the .22 caliber revolver was the weapon used to murder the Citgo clerk. He sought authority to seize all three weapons and the proceeds of the Citgo robbery. The warrant authorized those seizures.
 

 The search warrant was executed at McCulloch’s home on Diamond Point, Lake George, in the early evening of December 1, 1994. Sheriffs Department Investigator Robert Snyder and New York State Police Investigator Michael Huskie arrived at that site with the search party from both police agencies. They asked defendant to accompany them to the Sheriff Department’s substation for an interview. The suppression court made
 
 *636
 
 findings that defendant willingly accompanied the officers, and was advised of his
 
 Miranda
 
 rights upon arrival at the Lake George substation.
 

 It is uncontested that the initial questioning of defendant by Snyder and Huskie concerned his involvement in the Thompson’s Garage burglary and gun thefts and that questions on that subject were interspersed with questions on his participation in the Citgo robbery and murder. This pattern of questioning continued throughout the interrogation, until defendant gave a full written confession to complicity in the latter crimes several hours later.
 

 It is also undisputed that defendant had been a suspect in the Thompson’s Garage crimes for some time prior to December 1994, and that in the spring of 1994 the police, notably Investigators Snyder and Huskie, had personally been advised by an attorney that he represented defendant and that defendant was not to be questioned on the Thompson’s Garage burglary and weapons theft except in his presence.
 

 The search of the McCulloch residence eventually resulted in the discovery of the .357 caliber revolver, the P38 Walther pistol and, secreted in the attic, a blue nylon gym bag containing the .22 caliber revolver, ammunition, and United States currency in a clear plastic bag.
 

 Following the indictment of defendant, McCulloch and Anderson for intentional and felony murder and robbery, first degree, at the Citgo station, defendant moved to suppress both the physical evidence seized under the search warrant and his confession. Among the grounds urged before County Court regarding the seizure of physical evidence was that informant Mackrodt’s arrest, on the very day of the suppression hearing, for the Thompson’s Garage crimes demonstrated the falsity of his statement and thereby invalidated the search warrant. Defendant also argued before that court that his confession should be suppressed because the officers’ interrogation violated his State constitutional right to counsel which had indelibly attached in connection with the Thompson’s Garage criminal investigation.
 

 County Court rejected those and other grounds for suppression and denied defendant’s motion in all respects. Defendant then pleaded guilty to second degree murder. The Appellate Division affirmed (226 AD2d 903). That Court ruled that the search warrant was not vitiated by informant Mackrodt’s subsequent arrest for the Thompson’s Garage crimes, because
 
 *637
 
 that arrest did not establish the falsity of the relevant portions of his prior statement. The Appellate Division also rejected defendant’s argument that entry of counsel on the Thompson’s Garage matter required suppression of his confession to the Citgo robbery-homicide. In so concluding, it held that the two criminal transactions were unrelated, and that the intermingling of questions on both matters was of no moment because "the questions concerning the [Thompson’s] burglary were not the crucial element in securing defendant’s confession” (226 AD2d, at 904,
 
 supra).
 

 I
 

 Addressing, first, defendant’s argument attacking the validity of the search warrant because of the implications of Mackrodt’s subsequent arrest for the Thompson’s Garage crimes, we agree with the Appellate Division that the subsequent arrest was insufficient on this record to invalidate the warrant. Granting suppression based on the demonstrated lack of veracity of a search warrant applicant is designed to deter and penalize the knowing or reckless submission of false information by law enforcement officers, not to open the door to evidentiary impeachment of their sources.
 

 "The requirement that a warrant not issue 'but upon probable cause, supported by Oath or affirmation,’ would be reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause, and, having misled the magistrate, then was able to remain confident that the ploy was worthwhile”
 
 (Franks v Delaware,
 
 438 US 154, 168).
 

 Thus, the United States Supreme Court expressly limited this avenue of suppression to instances of deliberate falsity or reckless disregard on the part of law enforcement affiants. "The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant,
 
 not of any nongovernmental
 
 informant”
 
 (id.,
 
 at 171 [emphasis supplied]).
 

 The record of the instant suppression hearing is barren of any evidence that when Investigator VanNess applied for the search warrant he knew or recklessly disregarded evidence that Mackrodt had participated in the Thompson’s Garage burglary and weapons theft. VanNess did not swear or affirm to the truth of his informant’s statement, nor was he required to do so in order to establish probable cause
 
 (see, People v Sulli
 
 
 *638
 

 van,
 
 56 NY2d 378, 383). At most, the testimony adduced at the hearing was equivocal as to whether VanNess, in any other manner, vouched for his informant’s reliability, which, in any event, was also unnecessary here on the issue of probable cause
 
 (see, People v Sullivan, supra,
 
 at 384). Thus, defendant has failed to sustain his burden of proof that the search warrant affiant in this case knowingly or recklessly submitted false information to the issuing Magistrate in order to obtain the search warrant
 
 (see, People v Tambe,
 
 71 NY2d 492, 504), and the motion to suppress the evidence obtained pursuant to the warrant was properly denied.
 

 II
 

 We reach a different conclusion with respect to the validity of defendant’s confession. The uncontested evidence at the suppression hearing was that the police initiated their interrogation of defendant with questions concerning his participation in the Thompson’s Garage burglary and weapons theft, and thereafter persisted in intermingling questions on that subject throughout the interrogation until defendant had fully incriminated himself on the Citgo murder and robbery. The officers admitted that they questioned defendant on the Thompson’s Garage matter because they believed that the Citgo murder weapon was one of the guns stolen during the garage burglary. Thus, for the police, the two crimes were concededly related; proof of defendant’s participation in the burglary and gun larceny at the garage would be probative of his involvement in the crimes committed at the Citgo station.
 

 Our case law involving police interrogation of a suspect on the subject of one crime after the right to counsel had indelibly attached by the actual appearance of an attorney representing that suspect in another crime falls into two relevant categories.
 
 *
 
 The first of these is where the two criminal matters are so closely related transactionally, or in space or time, that questioning on the unrepresented matter would all but inevitably elicit incriminating responses regarding the matter in which there had been an entry of counsel. In such cases, interrogation on the unrepresented crime is prohibited even in the absence of direct questioning regarding the crime on which
 
 *639
 
 counsel had appeared. Thus, in
 
 People v Townes
 
 (41 NY2d 97), the defendant had been arrested, assigned counsel and then indicted on charges of attempted murder, assault, resisting arrest and weapons possession, all arising out of a violent street confrontation with the police. He then filed a complaint of police brutality committed in the course of that confrontation and arrest. We held that, in the absence of counsel, Townes could not have been interrogated by a police officer investigating that complaint on behalf of the Civilian Review Board; hence, his admissions in the course of that interrogation concerning possession of a weapon had to be suppressed. We said in
 
 Townes:
 

 "Here, the subject of the interrogation and the subject of the criminal charges are so inextricably interwoven in terms of both their temporal proximity and factual interrelationship as to render unavoidable the conclusion that any interrogation concerning the arrest would almost inevitably involve some potentially incriminating discussion of the facts of the crime itself. To separate the arrest from the crime itself and more importantly, to ask the defendant to make that distinction is to seek to draw far too fine a line” (41 NY2d, at 104,
 
 supra).
 

 Similarly, in
 
 People v Vella
 
 (21 NY2d 249), the defendant was arraigned and assigned counsel in New York County on a charge of receiving stolen property. Upon pretrial release, he was picked up and interrogated, in the absence of his attorney, regarding a Suffolk County burglary and theft of the very property upon which the criminal receiving charge was based. Thus, any incriminating admissions regarding the Suffolk County crimes would have implicated the defendant on the charge in New York County involving the same stolen property. This Court suppressed defendant’s confession, over a concurrence based upon the formal separateness of the offenses
 
 (id.,
 
 at 251-252;
 
 see also, People v Carl,
 
 46 NY2d 806 [questioning on successive burglaries at the same location one week apart, charged in a single indictment, on one of which the right to counsel had indelibly attached]).
 

 The instant case does not fall into the foregoing category, where the represented and unrepresented crimes are so thoroughly interrelated that questioning on one will almost necessarily elicit incriminating responses on the other. Discrete
 
 *640
 
 questioning of defendant concerning the Citgo crimes, by a police officer mindful and respectful of the indelible attachment of defendant’s right to counsel regarding the Thompson’s Garage matter, would not have created any serious risk of incriminating responses as to the latter crimes. Thus, the police officers would not have been wholly barred from questioning defendant on the Citgo crimes merely because he was already represented by counsel on the Thompson’s Garage investigation.
 

 More to the point here, however, is a second line of precedent involving interrogations concerning crimes less intimately connected, but where the police were aware that the defendant was actually represented by an attorney in one of the matters. Concededly in those cases, the interrogation actually entailed an infringement of the suspect’s State constitutional right to counsel by impermissible questioning on the represented crime.
 

 Thus, in
 
 People v Ermo
 
 (47 NY2d 863), the defendant was interrogated in the same session about a March 1972 sexual assault, on which he had already been charged and assigned an attorney, and an August 1971 sexual assault/homicide. Affirming the Appellate Division’s reversal of the conviction and suppression of the confession to the earlier homicide, we held in
 
 Ermo
 
 that the Appellate Division "was correct in evaluating the police interrogation as an integrated whole, in which the impermissible questioning as to the assault
 
 was not discrete or fairly
 
 separable” (47 NY2d, at 865,
 
 supra
 
 [emphasis supplied]). We also agreed with that Court’s conclusion that questioning on the represented charge was used "as a crucial element” in securing the defendant’s confession to the sexual assault/ homicide charge
 
 (id.).
 
 Finally, we specifically grounded our affirmance on the "critical factor” that the police
 
 "exploited
 
 concededly impermissible questioning” in order to advance their interrogation regarding the homicide charge on which the defendant was unrepresented
 
 (id.
 
 [emphasis supplied];
 
 see also, People v Miller,
 
 54 NY2d 616, 618-619 [the interrogation was "an integrated whole, in which the impermissible questioning * * * was 'so interrelated and intertwined’ with, and not fairly separable from, the questioning on the (unrepresented crime) that suppression of the latter was required”]).
 

 Applying the foregoing precedents to the instant case, we note that the Appellate Division utilized the wrong legal standard in basing its decision on the conclusion that the questions regarding the Thompson’s Garage crimes "were not
 
 the
 
 crucial element in securing defendant’s confession” (citing
 
 People v
 
 
 *641
 

 Ermo, supra
 
 [emphasis supplied]). Thus, that Court would limit suppression in intermingled interrogations to cases where concededly improper questioning on one crime, in violation of a defendant’s State constitutional right to counsel, was the single critical causal element in obtaining the confession to the unrepresented crime. This approach misses the emphasis we have placed on the factor that the "impermissible questioning * * * was not discrete or fairly separable”
 
 (People v Ermo, supra,
 
 47 NY2d, at 865), or "was 'so interrelated and intertwined’ with, and not fairly separable from, the questioning [on the unrepresented crime]”
 
 (People v Miller,
 
 54 NY2d, at 618-619,
 
 supra).
 

 The Appellate Division’s analysis also fails to take into account the element we identified as "critical” in
 
 Ermo,
 
 that the police
 
 purposely
 
 "exploited concededly impermissible questioning” in order to obtain a confession in the unrepresented matter
 
 (see, People v Ermo, supra,
 
 at 865). In
 
 People v Ruff
 
 (81 NY2d 330), we reaffirmed the teaching of
 
 Ermo
 
 to bar "police interference with an attorney-client relationship by questioning [on a pending matter] in a manner
 
 designed
 
 to elicit statements on an unrelated matter”
 
 (id.,
 
 at 334 [emphasis supplied]).
 

 In most cases the impetus for a suspect to confess will arise out of a complex and often not completely known set of factors. Moreover, just as in this case, a suppression court often will not have the benefit of a full transcript of the interrogation from which to make a comprehensive assessment of the role played by impermissible questioning in securing a suspect’s confession. Thus, the Appellate Division’s standard for suppression, that the impermissible questioning must demonstrably have been
 
 the
 
 crucial element in the confession on the unrepresented matter, would provide little disincentive for the police to engage in wrongful practices which violate a suspect’s State constitutional right to counsel.
 

 In our view, the undisputed facts and the unassailable inferences therefrom
 
 (see, People v Ferro,
 
 63 NY2d 316, 321,
 
 cert denied
 
 472 US 1007) require suppression under the
 
 Ermo
 
 precedential line. The interference with an existing attorney-client relationship in violation of defendant’s State constitutional right to counsel was flagrant and intentional here; the interrogating officers acknowledged their actual awareness when they interrogated defendant on December 1, 1994 of having been personally instructed six months earlier by defendant’s attorney not to question him on the Thompson’s Garage crimes. Moreover, the questioning on the Thompson’s Garage
 
 *642
 
 matter was completely "interrelated and intertwined”
 
 (People v Miller, supra,
 
 at 618) and "not discrete or fairly separable”
 
 (People v Ermo, supra,
 
 at 865) from interrogation on the Citgo robbery-homicide.
 

 Additionally, the concessions by the officers in their testimony at the suppression hearing demonstrate as a matter of law that the questioning on the Thompson’s Garage matter was purposely exploitive
 
 (id.; see also, People v West,
 
 81 NY2d 370, 377) and "designed to elicit statements on [the Citgo crimes]”
 
 (People v Ruff, supra,
 
 at 334). It is particularly noteworthy that defendant’s interrogation began with inquiries regarding the Thompson’s Garage crimes, and the officers admitted not only that they joined the two subjects in the interrogation because they believed the two were related, but that they engaged in their most forceful and heated questioning in connection with the garage crimes. Unquestionably, their pointed questioning on the garage crimes, impliedly signifying knowledge of the damning connection between that matter and the Citgo homicide, was designed to add pressure on defendant to confess.
 

 Under the foregoing undisputed facts and necessary inferences, the People had a heavy burden to demonstrate that defendant’s confession to the Citgo robbery and murder was uninfluenced by the taint of the violation of defendant’s State constitutional right to counsel
 
 (compare, Brown v Illinois,
 
 422 US 590, 603-604;
 
 People v Bethea,
 
 67 NY2d 364, 367-368;
 
 People v Chapple,
 
 38 NY2d 112, 115). The People having failed to sustain that heavy burden, defendant’s confession should have been suppressed.
 

 Accordingly, the order of the Appellate Division should be reversed, defendant’s motion to suppress statements granted, and the matter remitted to County Court for further proceedings in accordance with this opinion.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Ciparick and Wesley concur.
 

 Order reversed, etc.
 

 *
 

 A third category, not pertinent here, prohibits the questioning of a defendant on any matters, whether related or unrelated, when defendant is in custody on the charge upon which the right to counsel has indelibly attached (see,
 
 People v Burdo,
 
 91 NY2d 146 [decided today];
 
 People v Rogers,
 
 48 NY2d 167).