THIRD DEPARTMENT, JULY, 2001

(July 5, 2001)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MAURICE WALKER, Appellant. [727 NYS2d 731] —Carpinello, J. Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered April 28, 1999, upon a verdict convicting defendant of the crimes of murder in the second degree (two counts) and burglary in the first degree.

Based upon information received during the investigation of the gunshot murder of John Soto in the City of Albany, police questioned Andre Roldan, who ultimately admitted his involvement in the crime and identified defendant as the shooter. Upon discovering that defendant was on parole, Albany police obtained a photograph of defendant through the assistance of a parole officer and showed the photograph to Roldan, who confirmed that it was a picture of the person who shot Soto. The police then obtained a warrant to search defendant's residence in Staten Island for a handgun, ammunition and certain

other items related to the murder. A parole violation warrant was also issued, authorizing defendant's arrest for violating the conditions of his parole based upon conduct unrelated to the murder. Two Albany police detectives and the parole officer traveled together to Staten Island to execute the warrants.

With assistance from New York City police, defendant was taken into custody on the parole violation warrant and his apartment was searched. Among the items seized during the search were drugs, several handguns and ammunition. Defendant was taken to a Staten Island police station where he was held overnight after being questioned by the Albany detectives and New York City police. The next morning he was arraigned in Staten Island on drug and weapons charges and counsel was assigned on these charges. At the request of the parole officer, defendant was released on his own recognizance, whereupon the parole officer took him into custody and, together with the Albany detectives, transported him to Albany for proceedings on the parole violation warrant.

Upon arrival in Albany, defendant was taken to an Albany police station where the parole officer served him with the necessary parole violation papers and then left, intending to return the next day to transport him to the Albany County Jail. After advising defendant of his *Miranda* rights, an Albany detective questioned defendant about the murder for approximately two hours, at the conclusion of which the detective had a 30-second dialogue with defendant about the drugs and weapons found in his Staten Island apartment. The next morning defendant was again advised of his *Miranda* rights and questioned about the murder. After being confronted with Roldan's statements, defendant confessed to the murder. He was thereafter indicted on multiple counts arising out of the homicide and, following a trial, convicted of two counts of murder in the second degree and one count of burglary in the first degree, prompting this appeal.

Defendant advances a number of arguments in support of his claim that County Court erred in denying his motion to suppress the evidence seized during the search of his apartment. First, we reject the argument that the search warrant was based upon stale information merely because Roldan did not provide the information to police until nearly three months after Soto's murder. The question of whether information is stale for the purpose of establishing probable cause cannot be resolved merely by counting the number of days between the events giving rise to the information and the issuance of the warrant (*see, People v Teribury*, 91 AD2d 815, 816). "Informa-

tion may be acted upon as long as the practicalities dictate that '[p]robable cause existent in the past' may continue [which] 'depends largely upon the property's nature' " (*id.*, at 816, quoting *United States v Brinklow*, 560 F2d 1003, 1005, 1006, *cert denied* 434 US 1047).

Considering all of the relevant circumstances, including the nature of the handgun and other items used by defendant during the commission of the murder that were to be seized, we perceive no basis to disturb County Court's finding that the information provided by Roldan was not stale for the purpose of establishing probable cause (*see, People v Freitag*, 148 AD2d 544, *lv denied* 74 NY2d 739). As "it is not unreasonable to infer that one who commits a crime will attempt to hide contraband and other evidence at a place over which he has control" (*People v De Sivo*, 194 AD2d 935, 937), we are unpersuaded by defendant's additional argument that there was an insufficient link between the items to be seized and defendant's residence to establish probable cause. Nor do we find any merit to defendant's claim that the information provided by Roldan was not shown to be reliable, for Roldan provided information based on his own personal knowledge, many of the details he supplied were then confirmed by the police and he gave information against his own penal interest (*see, People v Brown*, 267 AD2d 874, *lv denied* 94 NY2d 917). Accordingly, County Court did not err in denying defendant's motion to suppress the evidence seized during the search.

Defendant next contends that County Court erred in denying his motion to suppress his oral and written confessions because they were obtained in violation of his right to counsel. Even crediting defendant's claims that his custody on the parole violation was a "ruse," contrived to permit the Albany police to question him in the absence of counsel and that the parole officer was acting as an agent of the Albany police, the record establishes that defendant's confessions to the Albany murder, on which he was not represented by counsel, were obtained as the result of questioning which occurred when he was no longer in custody on the Staten Island drug and weapon charges, on which he was represented by counsel.[1] Accordingly, his right to counsel claim has merit only if it falls within one of the two categories described by the Court of Appeals in *People v Cohen* (90 NY2d 632; *see, People v Grant*, 91 NY2d 989; *compare, People v Burdo*, 91 NY2d 146, *with People v Steward*, 88 NY2d 496).

---

**1.** Defendant does not claim that he was represented by counsel on the parole violation charges.

"The first of these [categories] is where the two criminal matters are so closely related transactionally, or in space or time, that questioning on the unrepresented matter would all but inevitably elicit incriminating responses regarding the matter in which there had been an entry of counsel. In such cases, interrogation on the unrepresented crime is prohibited even in the absence of direct questioning regarding the crime on which counsel had appeared" (*People v Cohen, supra,* at 638-639). The presence of drugs and weapons in defendant's Staten Island apartment and the Soto murder three months earlier in Albany are not "so thoroughly interrelated that questioning on one will almost necessarily elicit incriminating responses on the other" (*id.,* at 639; *see, People v White,* 244 AD2d 765, 767, *lv denied* 91 NY2d 1014). Although one of the guns found in defendant's apartment could have been the Soto murder weapon,[2] "[w]ithout any other significant unifying factor, that fortuity has no independent legal significance" (*People v Grant, supra,* at 991). Accordingly, there was no violation of defendant's right to counsel under the first category.

In contrast to assessing the "relatedness" of the two criminal matters, which is essential to the first category, the inquiry under the second category is "whether questioning by the [Albany] police about the [Staten Island] represented crime[s] was discrete or fairly separable from the [Albany] unrepresented crime, and was 'purposely exploitive' and 'designed to add pressure on defendant to confess' to the unrepresented crime" (*id.,* at 991-992, quoting *People v Cohen, supra,* at 642). The two-hour interrogation of defendant shortly after his arrival at the Albany police station focused on the Soto murder. While defendant admitted that he was in Albany the day before the murder, when he went to Soto's apartment with Roldan and another person, he claimed that he left Albany that evening and was not involved in the murder. At the conclusion of the questioning, the detective asked defendant, "What's the deal with those guns and drugs that were found in the apartment down there in Staten Island?" Defendant admitted his possession of the items and the questioning ended. The next morning's interrogation again focused on the murder, with no questions about the drug and weapon charges. After defendant

---

2. Because the bullet that caused Soto's death fractured into several pieces, the People's expert could not conclude with any reasonable degree of certainty that any of the guns found in defendant's apartment fired the fatal shot. Based upon the nature and aggregate weight of the fragments, however, the expert concluded that the murder weapon had to have been larger than a .32 caliber and, therefore, the guns seized from defendant's apartment, which were all larger than .32 caliber, could not be excluded.

again denied his involvement in the murder, he was confronted with Roldan's statements identifying defendant as the person who shot Soto. Defendant then asked for a few minutes alone, after which he confessed both orally and in writing.

In these circumstances, it is clear that the brief questioning about the Staten Island crimes was discrete or fairly separable from the questioning about the murder, and was neither purposely exploitive nor designed to add pressure on defendant to confess to the murder. The record reveals no violation of defendant's right to counsel under either of the categories described in *People v Cohen* (*supra*) and, therefore, County Court did not err in denying defendant's motion to suppress his confessions.

Defendant also claims that the jury was improperly impaneled. When County Court directed the People to provide a race-neutral explanation for its exercise of a peremptory challenge to exclude a particular juror from the panel, the prosecutor explained that the juror's last name was the same as that of a predicate felon with whom the People were familiar and that the peremptory challenge was used because of the lack of time to investigate whether the juror was related to the felon. Defense counsel characterized the explanation as inappropriate, but otherwise offered nothing to demonstrate that it was a pretext for purposeful discrimination. Noting that the juror's last name was unique in a relatively small community, County Court accepted the People's explanation as race neutral and concluded that it was not pretextual. We see no basis to disturb County Court's ruling, despite the fact that the juror had remained silent during voir dire when the court asked the panel whether any family member had been convicted of a crime (*see generally*, *People v Allen*, 86 NY2d 101).

We have considered defendant's remaining claims regarding various trial rulings and find that none warrants any further discussion or reversal of the judgment of conviction.

Mercure, J. P., Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.