Michael CAMPBELL, Petitioner,

v.

BURGESS, Superintendent, Respondent.

No. 02–CV–6095.

United States District Court, W.D. New York.

July 6, 2004.

Michael Campbell, Auburn, NY, pro se.

Loretta S. Courtney, Monroe County District Attorney's Office, Rochester, NY, for Defendant.

## DECISION AND ORDER

BIANCHINI, United States Magistrate Judge.

## INTRODUCTION

Petitioner, Michael Campbell ("Campbell"), filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Court on three counts of second degree murder, one count of attempted second degree murder, one count of first degree assault, and one count of fourth degree criminal possession of a weapon. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(b).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Campbell's convictions arise from four shooting incidents (three murders and one attempted murder) in the City of Rochester between August 22, 1994, and April 15, 1995. All of the shootings stemmed from an argument in which Campbell became involved, which in turn led to a feud between Campbell and his associates on the one side, and Levi Wright, a/k/a "Poochie", and his gang on the other.

In mid-August 1994, Campbell was in the vicinity of Parsells and Denver Streets when he received a message on his pager which he wanted to answer. There was a pay telephone on the corner, but a woman was using it. By Campbell's estimate, the woman had been talking for about 45 minutes. Campbell asked the woman if he could use the phone, but she refused. He informed her that she had better get off the phone or he would hang it up. The woman swore at him, which led to an altercation between Campbell and the woman's boyfriend, who happened to be one of Poochie's cousins. The fight escalated with more individuals becoming involved, but no one was shot. Eventually, everyone dispersed.

Later that evening or early the next morning, while Campbell and some friends were in the vicinity of Webster Avenue and Ferndale Crescent, a group of armed individuals led by Poochie emerged from the bushes at the end of a cul-de-sac and started firing at Campbell. Campbell and his friends returned fire. Over the next several days, Campbell had shots fired at him three more times by Poochie or members of his gang.

On August 22, 1994, Campbell was shot at again, and this apparently was "the straw that broke the camel's back." Campbell took his gun and went out looking for Poochie. Upon seeing the tan Honda Accord that Poochie normally drove, Campbell and another man fired about ten rounds into the car, killing the two teenaged occupants, Peniel Bedell ("Bedell") and Byron Whyte ("Whyte"), both of whom sold drugs for Poochie. Poochie, however, was not in the car at the time. After the shooting, Campbell left Rochester to lie low in Florida for a few months.

Shortly after returning to Rochester, on December 3, 1994, Campbell went into a grocery store at the corner of Jefferson Avenue and Clifton Streets to buy some beer. Upon entering the store, Campbell, who happened to be drunk and stoned, spotted Jeremiah Thomas ("Thomas") standing over a cooler. Thomas was a member of Poochie's gang and one of the people whom Campbell believed had been involved in the Webster Avenue gun fight and subsequent attempts to kill him. Seeing Thomas refreshed the memory of those incidents in Campbell's mind and, when

Thomas reached down into the cooler, Campbell fatally shot him.

The final shooting occurred at about 2:00 a.m. on April 15, 1995, when Campbell approached Michael Lewis ("Lewis"), a/k/a "Tank", outside of the High Chaparral Club on Portland Avenue and asked whether Lewis's cousins had made statements to the police about Campbell. Lewis denied knowing anything about this although, in fact, he was aware that his cousin had given a statement to police implicating Campbell in the Bedell–Whyte killing. During this conversation, a car operated by unknown individuals drove by Campbell twice, nearly striking him. Campbell reached under his shirt to draw his gun, whereupon Lewis fled on foot. As Lewis was climbing a metal fence about a block away, Campbell caught up to him and shot him five times, causing life-threatening injuries and temporary partial paralysis. Lewis survived, however, and filed a felony complaint with the Rochester Police Department against Campbell.

Based upon the complaint and other information received concerning Campbell, Investigator Sheridan of the Rochester Police Department obtained a warrant for Campbell's arrest on charges of second degree attempted murder and first degree assault with respect to the Lewis shooting. The police executed the warrant on June 2, 1995, bringing Campbell into custody at about 10:00 p.m. that evening. Rather than immediately arraign Campbell, Investigators Sheridan and his partner, Investigator Schultz, interrogated Campbell for several hours. During this time, Campbell gave a statement admitting to the murders of Whyte, Bedell, Thomas, and the at-tempted murder of Lewis. However, he advised the officers that he was "not going to sign shit." Investigator Sheridan typed up this statement and had Campbell read it over. True to his word, Campbell refused to sign the statement.

The investigators then questioned Campbell about the August 14, 1994 murder of Akinwumi Vincent ("Vincent"). Campbell initially denied responsibility, but he later admitted that he had a problem with Vincent and shot him in the stomach. A second statement was transcribed regarding the Vincent killing, but Campbell refused to sign this one as well. Investigator Sheridan then pressed Campbell about the killing of Eddie West, telling him that the handgun used in that crime was the same one used to shoot Lewis. Campbell consistently denied being involved in the West killing, claiming that after he shot Lewis, he exchanged the gun he had used for a 9–mm rifle.

Campbell subsequently was indicted by a Monroe County Grand Jury and charged with three counts of second degree murder, one count of attempted second degree murder, one count of first degree assault, and one count of fourth degree criminal possession of a weapon.[1] A hearing pursuant to *People v. Huntley*, 15 N.Y.2d 72, 78, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965) ("*Huntley*"), was held before Judge Donald Mark in Monroe County Court to determine the voluntariness and admissibility of Campbell's statements to the police. Defense counsel argued that Campbell's statements should be suppressed because Campbell's right to counsel was violated by virtue of the fact that (1) a felony complaint already had been filed against

---

1. Defense counsel sought and obtained severance of the Vincent count from the remaining counts in the indictment on the ground that it was motivated by completely different circumstances and was otherwise unconnected to the other murders. The court determined that the Whyte, Bedell,and Thomas executionstyle murders and the attempted murder of Lewis would be highly prejudicial to the jury's consideration of Campbell's responsibility for the Vincent murder. Consequently, the court determined that "good cause" was shown for severing the Vincent homicide from the indictment.

Campbell charging him with the Lewis shooting; (2) Campbell was questioned following his arrest instead of being arraigned immediately upon the Lewis charge; and (3) the Whyte–Bedell–Thomas homicides were related to, or inextricably intertwined with the Lewis shooting for which Campbell's right to counsel had attached, making any questioning regarding the uncharged incidents unconstitutional.

At the hearing, Investigator Sheridan testified that after Campbell waived his *Miranda*[2] rights, they began discussing, in general terms, the feud between Campbell's associates and the gang led by Poochie and Lewis, as well as the recent spate of gang-related shootings in Rochester. 1/8/96 Transcript of *Huntley* Hearing at 30. About thirty minutes into the interrogation, Campbell spontaneously confessed to the murder of Lewis. 12/15/95 Transcript of *Huntley* Hearing at 59. This was the first murder to which Campbell confessed. *Id.* Investigator Sheridan testified that neither he nor his partner had asked Campbell any questions relative to the Lewis murder. 1/8/96 Transcript of *Huntley* Hearing at 60. Investigator Sheridan talked generally about the fact that there had been a lot of shootings, and said that he wanted Campbell's side of the story. Investigator Sheridan denied mentioning the Lewis shooting, however. *Id.*

According to the investigator, Campbell acknowledged that he was aware of the shootings but said that the only one in which he was involved was the Lewis shooting. *Id.* at 32, 34. Investigator Sheridan testified that "[they] moved right on" after Campbell made that statement and that they did not pursue the subject. *Id.* at 34. Investigator Sheridan testified that they did not ask Campbell anything

about Lewis, knowing that they could not question him on that matter due to the issuance of the warrant relating to the Lewis shooting. *Id.* at 35, 38.

The court issued a written decision on February 29, 1996, finding that Campbell knowingly waived his *Miranda* rights at the outset of questioning and that he was not threatened or tricked into waiving his rights or giving a confession. *See* 2/29/96 County Court Order, App. at 112–34.[3] The court did not find the interrogation, which began at about midnight and lasted until 4:33 a.m., to be coercive.

The court further found that suppression was not warranted simply because a felony complaint had been filed against Campbell. Under New York state law, the court observed, "where a defendant is arrested pursuant to an arrest warrant, he cannot be questioned without counsel relative to the charges contained in that warrant, but *can* be questioned without counsel present relative to any other unrelated crimes." *Id.* at 13, App. at 124 (citing, *e.g.*, *People v. Ruff*, 81 N.Y.2d 330, 599 N.Y.S.2d 221, 615 N.E.2d 611 (1993); *People v. West*, 81 N.Y.2d 370, 599 N.Y.S.2d 484, 615 N.E.2d 968 (1993)) (emphasis in original). The court concluded that this was precisely what happened in Campbell's case, since the police specifically refrained from questioning him about the Lewis shooting. *Id.*, App. at 124.

Similarly, the court rejected Campbell's argument relying on a slightly different line of state precedent that the Whyte–Bedell–Thomas murders were so "intertwined" with the Lewis shooting as to render the questioning on the former violative of his right to counsel which had attached with regard to the Lewis attack. *Id.* at 16–17, App. at 127–28. Concluding that

---

**2.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** Citations to "App. at ___" refer to Respondent's Appendix of Exhibits, submitted in connection with its answer to Campbell's habeas petition.

the fact that all of the shootings "shared a common motive did not violate defendant's right to counsel[,]" *id.* at 20, App. at 131, the court denied the suppression motion.

Campbell was tried before a jury in Monroe County Court (Mark, J.). Campbell did not testify in his behalf. The jury returned a verdict convicting Campbell of all counts in the indictment. Campbell was sentenced as a persistent violent felony offender to consecutive indeterminate terms of imprisonment of 25 years to life on each of the murder convictions; 25 years to life on each of the attempted murder and assault convictions, to run concurrently with each other but consecutively to the murder convictions; and a definite term of one year on the weapons conviction, to run concurrently with the attempted murder and assault convictions but consecutively to the murder convictions, for a total of 100 years to life in prison. *See* Sentencing Transcript at 20–22.

On direct appeal, Campbell argued that the court improperly refused to suppress his statements on the basis that he was denied his Sixth Amendment right to counsel, and that the jury's rejection of his defense of extreme emotional disturbance was against the weight of the evidence. The Appellate Division, Fourth Department, unanimously affirmed his conviction on September 29, 2000. *People v. Campbell,* 275 A.D.2d 984, 713 N.Y.S.2d 432 (4th Dept.2000). With regard to his right-to-counsel claim, the court held that "[a]lthough defendant's right to counsel had attached with respect to the attempted murder [of Lewis], questions concerning that charge were not impermissibly intermingled with questions concerning the uncharged matters on which defendant was

not represented (*see, People v. Miller,* 54 N.Y.2d 616, 618–19, 442 N.Y.S.2d 491, 425 N.E.2d 879 [ (1981) ]; *People v. Ermo,* 47 N.Y.2d 863, 865, 419 N.Y.S.2d 65, 392 N.E.2d 1248 [ (1979) ]; *cf., People v. Cohen,* [90 N.Y.2d] 632, 640–42, 665 N.Y.S.2d 30, 687 N.E.2d 1313 [ (1997) ] )." *Id.* The New York Court of Appeals denied leave to appeal on January 29, 2001. *People v. Campbell,* 96 N.Y.2d 732, 722 N.Y.S.2d 799, 745 N.E.2d 1022 (2001).

Campbell filed this federal habeas petition on January 20, 2002. He claims only that his statements were admitted in violation of his Sixth Amendment right to counsel, the same issue that he raised on direct appeal.[4] For the reasons set forth below, Campbell's § 2254 petition is denied.

## DISCUSSION

### I. Standard of Review

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor,* 529 U.S. 362, 375–76, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

### III. Merits of the Petition

#### A. Violation of Sixth Amendment Right to Counsel

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assis-

4. Respondent does not raise the failure to exhaust with regard to Campbell's claim. The Court determines that it has been fully exhausted, 28 U.S.C. § 2254(b); *Bossett v.* *Walker,* 41 F.3d 825, 828 (2d Cir.1994), *cert. denied,* 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995), and is properly before the Court on habeas review.

tance of Counsel for his defence." In *McNeil v. Wisconsin*, 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), the Supreme Court explained when this right arises:

> The Sixth Amendment right [to counsel] ... is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.

*Id.* at 175, 111 S.Ct. 2204 (citations and internal quotation marks omitted). Accordingly, the *McNeil* court held that a defendant's statements regarding offenses for which he had not been charged were admissible notwithstanding the fact that his Sixth Amendment right to counsel had attached with respect to other charged offenses. *See id.* at 176, 111 S.Ct. 2204. Revisiting this issue in *Texas v. Cobb*, 532 U.S. 162, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001), the Supreme Court observed that some state courts and federal Courts of Appeals have read into the offense-specific definition outlined in *McNeil* "an exception for crimes that are 'factually related' to a charged offense." *Id.* at 168 & n. 1, 121 S.Ct. 1335 (citing *United States v. Covarrubias*, 179 F.3d 1219, 1223–24 (9th Cir. 1999) ("An exception to the offense-specific requirement of the Sixth Amendment occurs when the pending charge is so inextricably intertwined with the charge under investigation that the right to counsel for the pending charge cannot constitutionally be isolated from the right to counsel for the uncharged offense.") (quotations omitted); *United States v. Melgar*, 139 F.3d 1005, 1013 (4th Cir.1998); *United States v. Doherty*, 126 F.3d 769, 776 (6th Cir.1997); *United States v. Arnold*, 106 F.3d 37, 41 (3rd Cir.1997); *United States v. Williams*, 993 F.2d 451, 457 (5th Cir.1993); *Commonwealth v. Rainwater*, 425 Mass. 540, 681 N.E.2d 1218, 1229 (1997); *In re Pack*, 420 Pa.Super. 347, 616 A.2d 1006, 1010–1011 (1992)). The majority opinion in *Cobb* observed that "several of these courts have interpreted *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977),[5] and *Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985)[6]—both of

---

**5.** In *Brewer v. Williams*, a suspect in the abduction and murder of a 10–year–old girl had fled from the scene of the crime in Des Moines, Iowa, some 160 miles east to Davenport, Iowa, where he surrendered to the police. An arrest warrant was issued in Des Moines on the abduction charge, and the suspect was arraigned on that warrant in Davenport. Officers from Des Moines picked up the suspect in Davenport. En route to Des Moines, one officer persuaded him to lead the police to the victim's body. Ultimately, the accused was convicted of the murder. The Supreme Court in *Brewer* upheld the federal habeas court's conclusion that the police had violated the suspect's right to counsel in that the officer's comments to the suspect constituted interrogation and that the suspect had not validly waived his right to counsel simply by responding to the officer. *See Brewer*, 430 U.S. at 405–06, 97 S.Ct. 1232.

The Supreme Court in *Cobb* noted that the *Brewer* opinion "simply did not address the significance of the fact that the suspect had been arraigned only on the abduction charge, nor did the parties in any way argue this question." *Cobb*, 532 U.S. at 169, 121 S.Ct. 1335. The Court tersely stated that "[c]onstitutional rights are not defined by inferences from opinions which did not address the question at issue." *Id.* (citing *Hagans v. Lavine*, 415 U.S. 528, 535 n. 5, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974)).

**6.** *Moulton* involved two individuals indicted for a series of thefts, one of whom had agreed to cooperate secretly with the police in the investigation of his co-defendant. At the behest of the police, the informant recorded several telephone calls and one face-to-face conversation he had with Moulton during which the two talked about their criminal activities and possible alibis. During these conversations, Moulton made various statements incriminating himself both in the thefts for which he had been charged as well as in

which were decided well before *McNeil*— to support this view, which [petitioner] now invites us to approve. We decline to do so." *Id.*

According to the Supreme Court in *Cobb*, neither *Brewer* nor *Moulton* addressed the precise question before it— namely, whether a criminal defendant's Sixth Amendment right to counsel attaches not only to the offense with which he is charged, but to other offenses " 'closely related factually' " to the charged offense. *See Cobb*, 532 U.S. at 170, 121 S.Ct. 1335. To the contrary, the Court found, to the extent *Moulton* spoke to the issue at all, it "expressly referred to the offense-specific nature of the Sixth Amendment right to counsel[.]" *Id.* (citing *Moulton*, 474 U.S. at 168, 177, 179–80, 106 S.Ct. 477). Thus, the Court found no basis in its prior precedent for expanding *McNeil* to create an exception to its offense-specific definition.

However, the majority in *Cobb* also recognized that the definition of an "offense" is "not necessarily limited to the four corners of a charging instrument." *Id.* at 173, 121 S.Ct. 1335. Accordingly, it held that "when the Sixth Amendment right to counsel attaches, it does encompass of-

fenses that, even if not formally charged, would be considered the same offense under the *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) test." *Id.* at 173, 121 S.Ct. 1335.[7] The majority opinion in *Cobb* rejected the dissenters' approach, 532 U.S. at 173, 121 S.Ct. 1335, which recommended defining "offense" more broadly "in terms of the conduct that constitutes the crime that the offender committed on a particular occasion, including criminal acts that are 'closely related to' or 'inextricably intertwined with' the particular crime set forth in the charging instrument," *id.* at 186, 121 S.Ct. 1335 (dissenting opn.).

*Cobb* is dispositive of Campbell's right-to-counsel claim. In *Cobb*, the victim, Owings, reported to the sheriff's office that the home he shared with his wife and 16–month–old daughter had been burglarized. Owings also informed the police that his wife and daughter were missing. Cobb, the accused, lived across the street from the victim. Acting on an anonymous tip that Cobb was involved in the burglary, the police questioned him about that event. However, Cobb denied any involvement. About eight months later while under ar-

---

several additional crimes. The police then charged Moulton, in a superseding indictment, with the original crimes along with counts of burglary, arson, and three additional thefts. Portions of the conversations were introduced at Moulton's trial, which resulted in his conviction of three of the originally charged thefts plus one count of burglary. The habeas court agreed that the introduction of the recorded conversations violated Moulton's Sixth Amendment right to counsel, holding that " '[t]hose statements may be admissible in the investigation or prosecution of charges for which, at the time the recordings were made, adversary proceedings had not yet commenced. But as to the charges for which Moulton's right to counsel had already attached, his incriminating statements should have been ruled inadmissible at trial, given the circumstances in which they were ac-

quired.' " *Maine v. Moulton*, 474 U.S. at 168, 106 S.Ct. 477 (quoting *State v. Moulton*, 481 A.2d 155, 161 (Maine 1984)). The Supreme Court in *Moulton* affirmed the state court's grant of habeas corpus.

7. *Blockburger* held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304, 52 S.Ct. 180. The Supreme Court has "applied the *Blockburger* test to delineate the scope of the Fifth Amendment's Double Jeopardy Clause, which prevents multiple or successive prosecutions for the 'same offense.' " *Cobb*, 532 U.S. at 173, 121 S.Ct. 1335 (citations omitted).

rest for an unrelated offense, Cobb again was questioned about the incident, whereupon he confessed to the burglary but denied any knowledge relating to the disappearances. A month later, counsel was appointed to represent Cobb on the burglary charge. *See* 532 U.S. at 165.

In November 1995, Cobb was free on bond and living with his father. At that time, Cobb's father contacted the sheriff's office to report that Cobb had confessed to killing Owings' wife during the burglary. A warrant subsequently was issued for Cobb's arrest, and he was taken into custody and administered his *Miranda* warnings. Cobb waived these rights and admitted murdering Owings's wife and daughter. Cobb's confession was used at his trial, where he was found guilty of capital murder for killing more than one person in the course of a single criminal transaction. *See id.* at 165–66, 121 S.Ct. 1335.

The Supreme Court noted that at the time Cobb confessed to the murders, he had been indicted for burglary, but he had not been charged in the deaths of the wife and daughter. As defined by Texas law, burglary and capital murder are *not* the same offense under *Blockburger*. *Cobb*, 532 U.S. at 174, 121 S.Ct. 1335 (citations omitted). Thus, in light of the "offense-specific" rule for determining attachment of an accused's right to counsel, the Court held that the Sixth Amendment right to counsel did not bar police from interrogating Cobb regarding the murders, and his confession was admissible.

Here, in contrast to the crimes in *Cobb*, the Whyte–Bedell–Thomas murders and the Lewis shooting were entirely separate spatially and temporally, and each involved a different victim. The only common link among the four crimes was that they were motivated by Campbell's animosity toward Lewis and Poochie and their drug-selling associates. Even under the interpreta-

tions of *McNeil* which were abrogated by the Supreme Court in *Cobb*, Campbell's case still would not have presented a violation of federal constitutional law. *See, e.g., United States v. Melgar*, 139 F.3d at 1014–15 ("[T]he fact that the old and new charges involve the same time, place, and conduct is not enough to invoke the 'closely related' exception."). Courts who previously recognized the "closely related" exception also required that the defendant "demonstrate that the interrogation on the new offenses produced incriminating evidence as to the previously charged offenses." *Id.* (citing, *e.g., United States v. Arnold*, 106 F.3d 37, 41–42 (3d Cir.1997); *United States v. Mitcheltree*, 940 F.2d 1329, 1341–42 (10th Cir.1991); *United States v. Rodriguez*, 931 F.Supp. 907, 926–27 (D.Mass.1996)). Here, the only questioning concerning the Lewis crime that arguably occurred was when Investigator Sheridan asked Campbell what he did with the gun used in the Lewis shooting and informed him that the ballistics evidence proved that it was the same gun used to kill Eddie West. *See supra* at pg. 4. Campbell, however, steadfastly maintained that he had nothing to do with West's murder, and the police obtained no further incriminating information regarding the Whyte–Bedell–Thomas shootings or the West shooting. Upon the factual circumstances present before it, the Court is unable to find that a violation of Campbell's Sixth Amendment right to counsel occurred during his pre-arraignment interrogation.

## CONCLUSION

For the reasons stated above, Michael Campbell's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Campbell has failed to make a substantial showing of a denial of a constitu-

tional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED.**