OPINION OF THE COURT
Albert Tomei, J.
It is alleged that the defendant, Dennis Burke (hereinafter, defendant), repeatedly sexually assaulted a child over a period of years. In addition, it is alleged that the defendant possessed numerous lewd photographs of children, some of which depicted children engaging in sex acts, as well as videotaped depictions of defendant engaging in sex acts with young children. Defendant stands charged with numerous counts of sodomy in the second and third degrees, use of a child in a sexual performance, promoting an obscene sexual performance of a child, possessing an obscene sexual performance of a child, and endangering the welfare of a child.
Defendant moves to suppress evidence obtained from a search of defendant’s home made pursuant to a search warrant signed by a Judge of the Criminal Court. The court held an evidentiary hearing on defendant’s motion, at which Detective Kathleen Heavey testified for the People. After reviewing the warrant and the affidavit in support thereof, as well as the papers submitted by both parties on the motion, the court finds that the warrant was supported by probable cause, and was in all other respects legally sufficient. Therefore, the motion to suppress the evidence obtained thereby must be denied, except as to certain items seized which were beyond the scope of the warrant.
FINDINGS OF FACT[1]
On July 21, 1998, at approximately 5:30 p.m., the police were summoned to Fast Photo, a photo developing lab located at 8508 Bay Parkway in Brooklyn, in response to a 911 call from an employee at the lab. The employee informed the police that defendant had provided the lab with a roll of undeveloped film to be processed. After the film was developed, the employee saw that one of the resulting photographs depicted a young *717 child posed with her face, mouth agape, in close proximity to the clothed crotch of an adult male; the male depicted in the photographs appeared to be sexually aroused. Police officers waited at the photo lab for defendant to arrive. When defendant presented himself at the photo lab and requested the photographs, he was placed under arrest.
Detective Kathleen Heavey of the New York City Police Department Sexual Exploitation of Children Squad was assigned to investigate the case. At Victory Memorial Hospital, the detective spoke to the 11-year-old child depicted in the photograph with defendant, as well as her 8-year-old sister, who took the picture at defendant’s direction. The children’s mother was also present. Next, Detective Heavey went to the 62nd Precinct, the precinct within which defendant’s arrest had occurred, to voucher the photographs. The precinct desk sergeant told the detective that defendant’s son, John Burke, had inquired about getting access to defendant’s home for the purpose of retrieving a “cash box” containing $10,000 which he said he intended to use to pay for defendant’s legal expenses. Detective Heavey informed defendant’s son that he would not be permitted to enter the home at that time.
On the morning of July 22, 1998, Detective Heavey conferred with the District Attorney’s Office about whether to undertake a search of defendant’s home. The detective had learned that defendant resided at 2862 West 17th Street, Brooklyn, from pedigree information provided by defendant following his arrest. In addition, one of defendant’s neighbors informed the detective that defendant resided at 2862 West 17th; that he or she had seen children entering and exiting defendant’s home; that he or she knew the names of defendant’s children; and that he or she had suspected that defendant was a child molester.[2] Detective Heavey also knew from her conversation with John Burke that defendant resided at 2862 West 17th Street.
Sometime between 12:00 p.m. and 12:30 p.m. on July 22, 1998, the detective took pictures of the exterior of the building located at 2862 West 17th Street, Brooklyn. As Detective Heavey took pictures of the residence, she saw a uniformed officer guarding the entrance to the home. The officer informed her that John Burke was sitting in a vehicle parked in front of the defendant’s residence and had insisted that he be permit *718 ted to enter the home. Detective Heavey spoke with John Burke, who again asked permission to get the cash box. The detective said that she would contact him at such time as he would be permitted to enter the home.
At approximately 8:25 p.m. on July 22, 1998, Detective Heavey submitted an application for a search warrant to a Judge of the Criminal Court (hereinafter, issuing Judge). In her affidavit in support of the warrant application, Detective Heavey stated the following, in pertinent part:
(1) That 11-year-old female and 8-year-old female “complaining witnesses” informed her that on or about July 21, 1998, at approximately 4:00 p.m., inside the complainants’ Brooklyn home, Dennis Burke instructed the younger child to take the photograph of the older child’s face with her mouth open in close proximity to defendant’s crotch (as described above). The older child stated that she felt a bulge against her face as she posed with defendant. According to the 11-year-old child, both she and the 8-year-old complainant had been photographed with defendant in similar poses numerous times on prior occasions.
(2) That at approximately 5:00 p.m. on July 21, 1998, Dennis Burke provided a roll of undeveloped film to a clerk at Fast Photo, who, after recognizing the indecent nature of the photographs, informed the police.
(3) That “deponent is further informed by witnesses known to the New York City Police Department that numerous children have been observed entering and exiting Dennis Burke’s home at the subject location at all hours of the day and night, unaccompanied by any other adult. These witnesses have also observed Dennis Burke give these children food, candy, and money.”
(4) That the “subject location is a three story red brick building, semi-attached, which is clearly marked ‘2862’ above the black metal door adjacent to the garden. There is a white door attached to the garage numbered 2862. The first floor apartment is on the ground floor of 2862 West 17th Street and includes the garage.”
(5) That, based upon her training and experience as a detective, including training in the New York City Police Department Sex Crimes Course and Vice Division Training Course (which includes education about pedophilia), Detective Heavey is “aware that sex offenders, particularly pedophiles, often retain mementos of their illicit sexual activity.”
*719 (6) Detective Heavey’s affidavit concluded that, “Based on the above, I believe that the subject location contains additional photographs of the complaining witnesses as well as other children, as well as diaries, journals, computer disks, NAMBLA literature/[3] child-related paraphernalia, photographic equipment, receipts from photo developing stores, and photo albums.”
(7) The affidavit requested permission to search “2862 West 17th Street, First Floor and Garage Brooklyn, N.Y.”[4]
In accordance with Detective Heavey’s request, the search warrant authorized the search of “2862 W. 17th Street, First Floor and Garage, Brooklyn, New York,” for evidence of “photographs of the complaining witnesses and other children; diaries, journals, computer disks, NAMBLA literature, child-related paraphernalia, photographic equipment, receipts from photo developing stores, and photo albums.”[5]
At approximately 9:40 p.m. on July 22, 1998, Detective Heavey and other detectives went to the subject premises to execute the warrant. Detective Heavey brought the warrant to the premises and showed it to the other detectives before commencing the search. As the detectives were walking through the home, John Burke entered the premises. Detective Heavey accompanied defendant’s son to the attached garage, where, he said, the green cash box was located. Inside a cabinet in the garage, Detective Heavey found a green metal box. She opened it to find not currency, but numerous photographs of males and females — most of whom clearly appeared to be under the age of 16 — portrayed in sexually explicit poses. In addition, the box contained two videotape cassettes: one inscribed with the name “Eric,” and one inscribed with an “X.” The box also contained a note which read, “I want to have sex with you” — in Detective *720 Heavey’s opinion, the note was written in a child-like scrawl.[6] After the true contents of the “cash box” were revealed, John Burke asked to look in a boot located in the garage; he retrieved $100 from the boot, then left the premises.
Suspecting that the videotape cassettes might contain additional evidence, Detective Heavey gave the tapes to another detective, who played the tape marked “Eric” on a videocassette player located in the living room. This tape contained images of defendant engaging in oral and anal sodomy with a male child who appeared to be under 16 years old. The detectives seized 84 additional unmarked videotape cassettes from the living room and garage. These tapes, along with the tape marked “X” that had been discovered in the green box, were not played while the detectives were inside the subject premises, but were viewed at the police station house in the course of the following week. The ‘X” tape contained more images of defendant’s sexual encounters with minors, but, apart from testimony concerning one tape found under a television set located in the living room, there was no evidence adduced at the hearing that the other tapes contained illicit material.
After viewing the “Eric” videotape, Detective Heavey continued the search. Also found inside the green box was a photograph album marked “VTR” and one inscribed “TRAY— Upstate New York kids.” Several photographic albums— described by Detective Heavey as “mini-albums,” were also found in the green box. These albums contained photographs of apparent children in states of undress; in some of the photographs, the children are depicted engaging in sex acts. The green box also contained a condom.
Near a television set in the living room, the detectives found more photographs depicting one of the children who had been present when the photographs obtained from the photo lab were taken.[7] From a dresser found in the living room, Detective Heavey seized defendant’s passport, Social Security card stub, and some letters. Several pieces of video and still camera equipment were seized from a closet in the living room area. Also, a cardboard box containing numerous pornographic magazines and nine additional “mini-albums” — none of which contained child pornography — was seized from the garage. Various items of clothing were also seized, including a knit *721 pink shirt, four pairs of ladies’ underpants, and a lavender nightgown; these articles of clothing were similar in appearance to the items of clothing worn by the child seen in the “Eric” videotape. Also seized from the bedroom were a pair of “camouflage” shorts similar to those worn by defendant in the “Eric” videotape, as well as a tube of surgical lubricant. Defendant was seen to use the lubricant in the course of engaging in a sex act with the male child.
CONCLUSIONS OF LAW
Though courts should not act as a mere “rubber stamp” for law enforcement authorities, search warrant applications “should not be read in a hypertechnical manner as if they were entries in an essay contest. On the contrary, they must be considered in the clear light of everyday experience and accorded all reasonable inferences.” (People v Hanlon, 36 NY2d 549, 559 [1975].) New York courts have recognized a “strong preference for search warrants.” (Supra, at 558.) “Where it appears that the Magistrate has conducted * * * a measured and comprehensive examination into the basis for the warrant, the factual determination as to probable cause will, of itself, constitute a suitable makeweight when the warrant is challenged.” (Supra, at 559.) Reading the search warrant and supporting affidavit in this case with a view toward common sense and the practicalities of the situation, the court finds that they pass legal muster.
I. Probable Cause
A. Probable cause to believe that evidence of criminality would be found at defendant’s home
The warrant application stated, based on the personal knowledge of the detective affiant and information she received from the photo lab clerk — an identified citizen informant — that defendant possessed photographs depicting a male adult holding a young female child’s head against his crotch in an apparent effort to portray the child in the prelude to engaging in a sex act. From information provided by the child, it was known that the child felt a bulge against her cheek as the photograph was taken — indicating the male adult’s apparent arousal — and that she had posed in similar photographs involving the same adult. That defendant was, in fact, the male adult in the photograph and the same male who had taken prior similar photographs of the female child was, likewise, demonstrated by information provided by the female child to Detective Heavey.
*722 Contrary to defendant’s assertion, the warrant application is not deficient because, according to defendant, the hearsay information provided by the female children fails to satisfy the Aguilar /Spinelli test. “It is settled law in New York that probable cause may be based on unsworn hearsay only when the two-prong test of Aguilar v Texas (378 US 108) and Spinelli v United States (393 US 410) is satisfied, i.e., if there is a reasonable showing that the informant was reliable and had a basis of knowledge for the statement.” (People v Hetrick, 80 NY2d 344, 348 [1992] [citations omitted].) In this case, the female children are characterized as “complaining witnesses” with whom the police apparently had face-to-face contact, along with their mother. Though it is not stated specifically in the affidavit, it may be reasonably inferred that the children were identified citizen informants known to the police. “An identified citizen informant is presumed to be reliable.” (See, People v Rivera, 210 AD2d 895, 895-896 [4th Dept 1994], citing People v Hetrick, 80 NY2d, at 349.) Moreover, the female children’s reliability was corroborated by other evidence, i.e., the photographs.
As to the second prong of the Aguilar / Spinelli test, it is apparent from their description of events as related in the affidavit that the female children’s basis of knowledge was their direct observations. (People v Rivera, supra, at 896 [because citizen informants were eyewitnesses, basis of knowledge requirement was also satisfied].)[8]
Nevertheless, defendant contends that even if the photograph and the female children’s information establish a link between defendant and the criminal activity, because the photograph of the child was taken in her home, and there is no tangible evidence that any criminal activity had ever taken place in defendant’s home, there was no probable cause to believe that evidence of a crime would be found in his residence.
“[A] search warrant application must provide the magistrate with information sufficient to support a reasonable belief that evidence of illegal activity will be present at the specific time and place of the search.” (See, People v Edwards, 69 NY2d 814, 816 [1987].) In this case, the warrant application established reasonable cause to believe that defendant had engaged in recent criminal activity as evidenced by the photograph of the female child. Furthermore, the affidavit established, from in *723 formation given by the female child, that defendant had taken additional illicit photographs on prior occasions; these photographs were not recovered from the photo lab. Therefore, there was reasonable cause to believe that further evidence of defendant’s criminal conduct existed. Detective Heavey’s expert testimony, together with reasonable inferences drawn from the facts of the case, provided probable cause to believe that this evidence would be found at defendant’s home.
Based upon her specialized training as a sex crimes and child abuse investigator, Detective Heavey, a 12-year police veteran, was aware that “sex offenders, particularly pedophiles, often retain mementos of their illicit sexual activity.” Expert opinion about the probable location of criminal evidence may be considered by the Magistrate in determining the sufficiency of a warrant application. (See, United States v Fama, 758 F2d 834, 838 [2d Cir 1985].) Furthermore, “[b]ased on the nature of the evidence and the type of offense, a magistrate may draw reasonable inferences about where evidence is likely to be kept.” (United States v Baldwin, 987 F2d 1432, 1435 [9th Cir 1993].) For example, courts have recognized that, “in the case of drug dealers, evidence is likely to be found where the dealers live.” (Supra.) In the case of pedophiles, a fortiori, evidence is likely to be found where the pedophiles live.[9] Considering the nature of the evidence and the type of offense, the Magistrate could have reasonably inferred that it was not only probable, but highly likely that such photographs would be kept in the perpetrator’s home to ensure the privacy defendant needed to engage in the undoubtedly “intimate” activities involved in viewing his “mementos.”
B. Probable cause to believe that the subject residence is the defendant’s home
Paragraph 7 of the affidavit in support of the warrant provides that, “[t]he deponent is further informed by witnesses known to the New York City Police Department that numerous children have been observed entering and exiting Dennis Burke’s home at the subject location at all hours of the day and night, unaccompanied by any other adult. These witnesses have also observed Dennis Burke give these children food, candy, and money.” Defendant contends that this statement *724 failed to establish that the subject premises was his home, and since there was no basis for believing that the first-floor apartment and garage at 2862 West 17th Street contained evidence of a crime unless that location was established to be his home, the warrant was defective. Specifically, defendant claims that the allegation is insufficient because it is based on hearsay information that fails to satisfy the Aguilar /Spinelli test. Defendant is mistaken.
The informants who provided the information in paragraph 7, though unnamed in the affidavit, were known to the police. As such, their reliability is presumed. (See, People v Rivera, 210 AD2d, supra, at 896.) Only defendant’s strained reading of the affidavit could lead to the conclusion that the citizen informants’ basis of knowledge was not established. The informants stated that they “observed [children] entering and exiting Dennis Burke’s home at the subject location at all hours of the day and night, unaccompanied by any other adult.” The express language of the paragraph states that the informants’ basis of knowledge was their personal observations of the children, unaccompanied by any adult, entering the subject location — 2862 West 17th Street — with defendant on numerous occasions.
Defendant’s reliance on United States v Brown (832 F2d 991 [7th Cir 1987]) is misplaced. In Brown, the court found that probable cause did not exist to search for evidence of mail fraud at a location identified as defendant’s home. According to the court, though the search warrant affidavit alleged that defendant “ ‘did lease apartment #709 at 120 Westminster Row’ ” (supra, at 993), it failed to show how the police knew that the specified location was, in fact, defendant’s home. (Supra, at 994.) Moreover, “there was a paucity of information suggesting that a search of the Westminster address would uncover evidence of wrongdoing.” (Supra.) By contrast, in the present case, there is convincing support for the conclusion that evidence of wrongdoing would be found at defendant’s home, and the citizen informants’ eyewitness accounts of defendant’s comings and goings forged the link between the subject premises and defendant’s residence.
II. Scope of the Search
Defendant claims that the search of his home was beyond the scope authorized by the warrant because the police seized a number of items that were not specified in the warrant, including videotapes, clothing, and personal papers. With *725 regard to the videotapes marked “Eric” and “X,” the court concludes that they were properly seized after it was determined that they constituted evidence of the type authorized by the warrant. As to the remainder of the videotapes and the personal papers, the court finds that there was an insufficient basis to seize these items, and they must be suppressed. The clothing and the tube of surgical lubricant were properly seized as evidence of criminality discovered in plain view during the course of the lawful search.
A. The search and seizure of the “Eric” and ‘X” videotapes
The search warrant in this case authorized the police to search for “additional photographs of the complaining witnesses as well as other children, as well as diaries, journals, computer disks, NAMBLA literature, child-related paraphernalia, photographic equipment, receipts from photo developing stores, and photo albums.” Clearly, all of the still photographs depicting children in states of undress or engaging in sexual activity were properly seized pursuant to the warrant. However, in the course of searching for photographs and other items specified in the warrant, Detective Heavey also discovered two videotape cassettes, one marked “Eric” and the other marked “X.” The tapes were found in a green metal box the detective retrieved from a cabinet in defendant’s garage. Also in the box were numerous sexually explicit photographs depicting young children. Defendant argues that because videotape cassettes were not specified in the affidavit or warrant, the tapes were illegally seized. In addition, he claims that the police were not authorized to “search” the contents of the videotapes by playing them on a videocassette recorder.
The police may seize items not specified in the warrant if the warrant authorized the seizure of that type of property. (See, People v Dominique, 229 AD2d 719, 720 [3d Dept 1996] [warrant specifying “ ‘tatooing [sic] equipment’ ” authorized seizure of ink-stained bag and towel; warrant specifying “ ‘red and green piggy banks with change’ ” authorized seizure of coin wrappers].) Once the police saw that the videotape cassettes were surrounded by a plethora of sexually explicit still pictures of children, commingled in a closed metal container, they had reason to believe that the videotapes contained recordings of visual images depicting child pornography. Their suspicions were heightened by defendant’s son’s repeatedly expressed intense desire to obtain the box following his father’s arrest, and by the fact that one of the tapes bore a person’s name, and *726 the other was inscribed with an “X,” perhaps alluding to the illicit subject matter contained therein. Also, Detective Heavey’s expert opinion that pedophiles keep “mementos” of their illicit activities lent credence to the belief that the videotapes contained images of the type for which seizure was authorized.
Just as the search of the green box was authorized because there was reason to believe that it could contain the specified, illicit photographs, there was reason to believe that the videotape cassettes found in the green box may have served as “containers” — i.e., a storage medium — for illicit moving images similar in type to the photographs specified in the warrant. (See generally, United States v Ross, 456 US 798 [1982] [search of premises extends to all containers in which the property sought may be found], cited in People v Loorie, 165 Misc 2d 877, 879-880 [Monroe County Ct 1995] [warrant authorizing search for business records permitted search of computer drive because it is a device that could have been used to record such information].) Under the circumstances, the police were justified in figuratively “opening” the videocassette by playing the “Eric” tape to determine if, in fact, it contained visual images of the type specified in the warrant. Once the detectives determined that the “Eric” tape contained such images, they were justified in seizing the “X” tape and subsequently reviewing its contents to determine that it, too, contained child pornography.
B. The search and seizure of various items not specified in the warrant
Dozens of additional videotape cassettes, as well as clothing, a condom, and certain of defendant’s personal papers were seized from the home’s living room and bedroom. Because the unusual circumstances attending the discovery of the “Eric” and “X” videotapes did not apply to the seizure of the remaining cassettes, the court finds that they were not properly seized. The strong indicia that the tapes were of an illicit nature, which supported the search of the “Eric” and “X” tapes, is absent here. The remaining tapes were strewn about the apartment, apparently unmarked, and there was no particular reason to believe that a search of their contents would reveal evidence of the type specified in the warrant. Therefore, all of these tapes must be suppressed.
So, too, must the defendant’s personal papers and the condom be suppressed. These items were not specified in the warrant, nor were they the type of evidence sought in the war *727 rant. Moreover, they do not constitute contraband or clear evidence of criminality. (Compare, People v Shepard, 169 Misc 2d 517, 520 [Sup Ct, NY County 1996], citing People v Diaz, 81 NY2d 106 [police may seize item in plain view when incriminating nature is readily apparent].)
The nine “mini-albums” containing innocuous photographs, along with the pornographic magazines, none of which depicted children, must also be suppressed as beyond the scope of the search.
The items of clothing and the tube of surgical lubricant were properly seized under the plain view doctrine. (People v Shepard, supra.) These items were discovered in the course of the detectives’ lawful search for items specified in the warrant. Furthermore, the incriminating nature of the clothing and the lubricant were immediately apparent; in the “Eric” tape— viewed by the detectives prior to the seizure of the clothing— items of the clothing resembling the articles that were seized were seen to be worn by defendant or his victim in the course of the videotaped illicit sexual activity and the defendant was seen to use the lubricant in the course of a sexual act. Therefore, the clothing and tube of lubricant were properly seized.
III. Conclusion
In a long-term, proactive investigation, the police may have the luxury of time and the opportunity for careful reflection as they consider their next investigative move. However, the search in this case was not the culmination of a planned, preexisting operation. Rather, it was the result of a fast-evolving chain of events to which the police had to react, beginning with the 911 call from the photo lab, leading to defendant’s arrest, the interview of the young complainant depicted in the photographs taken from the photo lab, and finally, the application for and execution of the warrant. To be sure, the warrant in this case could have been better written. For example, in hindsight, any doubt as to the connection between defendant’s home and the subject premises could have been eliminated simply by including information from defendant’s driving record or postarrest pedigree information, of which the police had knowledge prior to preparing the affidavit in support of the warrant. Nevertheless, “[w]here a search warrant has been secured, the bona fides of the police will be presumed and the subsequent search upheld in a marginal or doubtful case.” (People v Hanlon, 36 NY2d, supra, at 558.)
*728 The court is satisfied that the warrant and supporting affidavit fall well within the margins of legality. The allegations in the affidavit concerning the photographs of the 11-year-old complainant linked defendant to recent criminal activity. From the allegation that defendant had taken similar lewd photographs of a child in the past, together with Detective Heavey’s expert opinion concerning pedophiles’ tendency to keep “mementos” of their criminal conduct, it may be reasonably inferred that defendant’s home would contain evidence of criminality, that is, additional illicit photographs and related evidence. Information from witnesses known to the police, but unnamed in the warrant, provided a reasonable basis for concluding that the subject premises was defendant’s home.
Therefore, and for the foregoing reasons, the court denies the motion to suppress the fruits of the search of 2862 West 17th Street and the attached garage, except for the videotapes other than the “Eric” and ‘X” cassettes; the condom; the nine “mini-albums” containing innocuous photographs; the pornographic magazines that do not depict children; and defendant’s personal papers. Because these items were beyond the scope of the warrant, they must be suppressed.

. The findings of fact are based upon the warrant and accompanying affidavit; the exhibits admitted into evidence at the hearing; and the testimony of Detective Heavey, whom the court found to be a credible witness.

. The neighbor’s identity was known to the police, but was not divulged in the search warrant application or at the hearing.

. The significance of “NAMBLA” is not explained. Presumably, in the context of this factual scenario, the detective was referring to the acronym for the North American Man-Boy Love Association.

. In addition, the affidavit requested permission to search defendant’s automobile, premised upon information that defendant used the vehicle to drive to the photo lab moments before he was arrested, and that it might contain more photographic evidence or photographic equipment used in the alleged crimes.

. Though the search warrant also authorized a search of the defendant’s automobile, no search was conducted because the vehicle could not be located.

. The green box also contained a handwritten note from “Dennis” to “Jackie.”

. Numerous photographic negatives were also seized from the living room and garage.

. Defendant did not attack the reliability or basis of knowledge with regard to information provided by the photo lab clerk.

. Defendant contends that the warrant affidavit contains no evidence from which one could conclude that he is a pedophile. It suffices to say that the affidavit’s description of the photograph of defendant and the female child belies that assertion.